# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **CASS B. SCRIPPS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:18-cv-00381 |
| v. | ) | Judge Trauger |
| | ) | Magistrate Judge Brown |
| | ) | |
| **AGENCY FOR THE PERFORMING** | ) | |
| **ARTS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are Plaintiff Cass B. Scripps's emergency motion for hearing on motion for temporary injunction (Docket Entry No. 7) and Defendant Agency for the Performing Arts, Inc.'s motion to stay pending arbitration (Docket Entry No. 8). For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion (Docket Entry No. 7) be **DENIED**, Defendant's motion (Docket Entry No. 8) be **GRANTED,** and that this action be **ADMINISTRATIVELY CLOSED** pending the completion of arbitration.

## I. PROCEDURAL BACKGROUND

Plaintiff, Cass B. Scripps, a Tennessee citizen, originally filed this action on April 11, 2018 in the Chancery Court for Davidson County, Tennessee, against Defendant, Agency for the Performing Arts, Inc. ("APA"), a Delaware corporation, seeking declaratory judgment that Defendant constructively discharged Plaintiff; that Defendant has no right to enjoin Plaintiff from working; and that Defendant has no right to enjoin or threaten to enjoin any prospective future

employer from employing Plaintiff. (Docket Entry No. 1-1, at 3-11).[1] On April 12, 2018, Plaintiff, essentially requesting identical relief, filed a motion for temporary injunction seeking to enjoin Defendant from communicating to any third persons that Plaintiff was still employed by Defendant, that Plaintiff was restricted from working, or that a prospective future employer was restricted from hiring Plaintiff. *Id*. at 12-14. On April 12, 2018, pursuant to the arbitration provisions in the parties' employment agreement, Plaintiff submitted a demand for arbitration with JAMS. (Docket Entry No. 8-1, Julia Johnson Declaration at, ¶ 5, attachment thereto, Exhibit 2, at 31-34). On April 13, 2018, the state court ordered a non-evidentiary hearing on Plaintiff's motion for temporary injunction to be held on April 23, 2018. (Docket Entry No. 4-1).

On April 19, 2018, Defendant removed the state court action to this Court under 28 U.S.C. § 1332, the federal diversity statute. (Docket Entry No. 1). On April 20, 2018, Plaintiff filed his emergency motion for hearing on motion for temporary injunction (Docket Entry No. 7), and Defendant filed its motion to stay pending arbitration (Docket Entry No. 8). On April 23, 2018, the District Judge referred these motions to the Magistrate Judge for decision (Docket Entry No. 14), and the Magistrate Judge conducted a hearing later that day (Docket Entry No. 15). At the conclusion of the hearing, the Magistrate Judge gave the parties until April 26, 2018 to file any replies to the pending motions. In a letter dated April 25, 2018, JAMS notified the parties of the commencement of arbitration. (Docket Entry No. 25-2, at 1). On May 2, 2018, the Magistrate Judge granted Defendant's motion for leave (Docket Entry No. 26) to file a supplemental response on May 4, 2018. (Docket Entry No. 28).[2]

---

[1]Unless stated otherwise, the citations to the record reference the Court's ECF pagination.

[2]Unfortunately, the filing and removal of this action, along with the various responses and replies, have unnecessarily delayed the arbitration process that will resolve the parties' issues.

2

## II. FACTUAL BACKGROUND

Plaintiff, a resident of Nashville, Tennessee, is a talent agent who represents a number of artists. (Docket Entry No. 1-1, at 3, ¶ 1). Defendant is a talent agency with its principal place of business in California and maintains an office in Nashville, Tennessee. *Id*., at ¶ 2. Plaintiff became employed by Defendant in August 2012 and has entered into a number of employment contracts that have extended his employment, the most recent of which was July 7, 2016. *Id*. at 4, ¶¶ 5-6. According to the July 2016 employment agreement, the parties agreed that Defendant would employ Plaintiff "for a 'Term' of three (3) years commencing August 1, 2016 through and including July 31, 2019 . . . ." (Docket Entry No. 8-1, at 3). The covenants in the employment agreement provide, in part, as follows:

> 7. Covenants.
>
> a. During the Term, Employee shall not without Employer's prior written consent engage directly or indirectly in any other trade, business or employment and shall not have any material financial or ownership interest, direct or indirect, in any person, firm or corporation or other entity which engages in any business which is the same as or substantially similar to Employer's business.
>
> . . . .
>
> f. In consideration of Employee being employed by Employer, during the Term and for a period of twelve consecutive months thereafter, Employee shall not, directly or indirectly either on Employee's behalf or on behalf of any other person, firm or corporation:
>
> > i. solicit any client of Employer for representation with Employee or with any other person, firm or corporation engaged in the talent agency business and/or with any business competitive with Employer or otherwise attempt to interfere with the relationship between Employer's clients and Employer; and
> >
> > ii. solicit other employees of Employer to take employment with Employee or employment with any other person, firm or

> corporation engaged in the talent agency business and/or with any business competitive with Employer or otherwise attempt to interfere with the relationship between Employer's employees and Employer.

*Id.* at 6-7. However, the non-solicitation provision was amended to specifically exempt the clients for whom Plaintiff was the Responsible Agent ("RA"). *Id.* at 7.

As to the applicable law governing the contract, the employment agreement provides:

> 10. <u>Applicable Law</u>.
>
> This Agreement shall be governed by and construed in accordance with the laws of the State of California, except that, if Employee resides or is primarily based outside California, the law of that state shall apply instead. Any and all proceedings regarding the Agreement shall take place in Los Angeles, California, unless otherwise agreed to by Employer.

*Id.* at 9. The employment agreement also contains an arbitration provision that states:

> 13. <u>Arbitration</u>.
>
> The sole and exclusive method by which Employee and Employer shall resolve any and all disputes arising out of or related to Employee's employment with Employer or the termination of that employment shall be by arbitration in accordance with the Mutual Agreement to Arbitrate attached hereto and incorporated herein by this reference.

*Id.*

The parties' arbitration agreement provides that the "Federal Arbitration Act shall govern the interpretation and enforcement of this Agreement, and the confirmation, vacation, correction or modification of any arbitration ruling or award made pursuant to this Agreement." *Id.* at 13. Section 1 of the Mutual Agreement to Arbitrate, entitled "Claims Subject to Arbitration," states:

> Except as expressly set forth in Section 2 below, both Company and Employee mutually consent to resolve by final and binding arbitration any and all disputes, claims, or controversies of any kind or nature, including but not limited to such matters arising from, related to or in connection with Employee seeking employment with, Employee's employment relationship by or the termination of Employee's

4

employment with the Company (collectively, "Claims") that either Employee may have against Company (and/or its past and present parents, affiliates, subsidiaries and/or each of their and the Company's respective past and present employees, independent contractors, owners, agents, officers, directors, board members, shareholders, successors, assigns, benefit plans and sponsors, fiduciaries, administrators or insurers) or Company (or one of its parents, affiliates, or subsidiaries) may have against Employee. The Claims subject to arbitration include, without limitation, (a) any Claims by Employee arising from, related to or in connection with: (i) any federal, state or local law or regulation prohibiting discrimination, harassment or retaliation based on race, color, religion, national origin, sex, age, disability or any other condition or characteristic protected by law; (ii) any alleged breach of contract or covenant, whether express or implied; (iii) any alleged violation of any federal, state, local, or other constitution, statute, ordinance, regulation, common law, or public policy; (iv) any dispute regarding wages, hours, bonuses or other compensation or payment; and/or (v) any personal, emotional, physical, economic, property or any other injury, loss or harm; and (b) any Claims that Company (or one of its parent, affiliates or subsidiaries) may have against Employee, including, without limitation, any alleged trade secret violations.

*Id.* at 11.[3]

The arbitration agreement provides that "[t]he arbitrator may award any form of remedy or relief (including injunctive relief) that would otherwise be available in court and any such form of remedy or relief awarded must comply with applicable state and federal law." *Id*. at 12. The

---

[3]Section 2 provides:

This Agreement does not apply to any Claims by Employee: (a) for state Workers' Compensation benefits; (b) for unemployment insurance benefits filed with the appropriate government entity; (c) arising under a benefit plan where the plan expressly specifies a separate arbitration procedure; (d) arising under the National Labor Relations Act and filed through a charge with the National Labor Relations Board; or (e) which are otherwise expressly prohibited by law from being subject to arbitration under this Agreement, provided such prohibition is not preempted under the Federal Arbitration Act or any other federal law. This Agreement does not preclude filing an administrative charge or complaint with the appropriate government entity if such filing is protected or required by law. However, to the full extent permitted by law, any Claims seeking monetary relief must be asserted in arbitration pursuant to this Agreement.

(Docket Entry No. 8-1, at 11).

5

arbitration agreement explains that "[e]xcept as modified by this Agreement, any arbitration will be filed with and conducted by JAMS," and that the arbitration will "be held at the closest office of JAMS to where Employee reported to work for Company unless otherwise mutually agreed to by the parties, pursuant to the JAMS Employment Arbitration Rules and Procedures ('Rules') in effect at the time of the demand for arbitration is filed . . . ." *Id.* Rule 19(a) of the JAMS Employment Arbitration Rules and Procedures states that the "Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing." *Id*. at 24. JAMS Rule 6(b) provides:

> If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

*Id.* at 18.

According to Plaintiff, on March 28, 2018, he notified Defendant that he had been constructively discharged due to a hostile work environment. (Docket Entry No. 1-1, at 7-8, ¶¶ 24-25; Docket Entry No. 7-3, at 22). On April 2, 2018, Plaintiff notified Defendant's Nashville office that he was returning his telephone and key card and inquired into making arrangements to collect his personal belongings. (Docket Entry No. 7-6). On April 4, 2018, Defendant notified a potential employer of Plaintiff that Plaintiff was under contract with Defendant until July 31, 2019. (Docket Entry No. 24).

### III. ANALYSIS

Pending before the Court are Plaintiff's emergency motion for hearing on motion for temporary injunction (Docket Entry No. 7) and Defendant's motion to stay pending arbitration

(Docket Entry No. 8). In his supplemental memorandum in support of motion for temporary injunction and in opposition to Defendant's motion to stay pending arbitration (Docket Entry No. 20), Plaintiff asserts that "[w]hat is before this Court is Plaintiff's request for immediate injunctive relief--namely, a Court Order stating that Mr. Scripps's contract has terminated because of his resignation or discharge." *Id*. at 1. Thus, Plaintiff now "seeks only an injunction (1) providing that Mr. Scripps's employment with APA has terminated and (2) enjoining APA from stating that it has not." *Id*. at 2. In response, Defendant contends that Plaintiff is improperly seeking "to have this Court usurp the authority of the arbitrator by issuing a preliminary injunction that would reach and determine the core issues in the arbitration" and "impermissibly alter the status quo." (Docket Entry No. 25, at 1). Defendant contends that according to the terms of the employment agreement Plaintiff's motion for temporary injunction should be heard by an arbitrator, or alternatively, that Plaintiff cannot show that he was constructively discharged or establish that the other factors for a preliminary injunction. *Id.* at 1-2.

In its motion to stay, Defendant contends that Plaintiff's claim for injunctive relief is arbitrable pursuant to the Federal Arbitration Act (FAA") because there is a valid agreement to arbitrate and the claim falls within the scope of the arbitration agreement. (Docket Entry No. 8, at 2). In response, Plaintiff contends that the Court has the authority to grant preliminary injunctive relief even when a mandatory arbitration provision exists; that Defendant waived its right to arbitrate by breaching the Mutual Agreement to Arbitrate when Defendant filed an arbitration demand with the JAMS office in Los Angeles; and that the arbitration provision is unconscionable because it allows Defendant to seek injunctive relief while prohibiting Plaintiff from doing so. (Docket Entry No. 13, at 4, 6, 7).

7

## A. INJUNCTIVE RELIEF

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). "'A preliminary injunction is an extraordinary and drastic remedy,' one that should 'only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted). A plaintiff seeking a preliminary injunction must establish four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quotation marks and citations omitted). These "four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited v. Questar Publications*, 52 F.3d 1373, 1381 (6th Cir.1995). A court must "make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). "'Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.'" *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (citation omitted); *see also S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991) (district court did not abuse its discretion where it "focused only on the 'irreparable injury' requirement which it found to be 'the single most important prerequisite'"); *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) ("A finding of irreparable harm is the single most important prerequisite that the Court must examine when ruling upon a motion for a

preliminary injunction.") (internal quotation marks and citations omitted). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

The FAA applies to "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction[.]" 9 U.S.C. § 2. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA reflects a strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. Thus, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citations omitted).

Plaintiff argues that Sixth Circuit precedent provides that a district court may grant preliminary injunctive relief in a dispute subject to mandatory arbitration under the FAA, citing *Performance Unlimited v. Questar Publications*, 52 F.3d 1373, 1380 (6th Cir.1995). In

9

*Performance*, the Sixth Circuit found that the district court erred when it found that it could not enter preliminary injunctive relief because the dispute between the parties was the subject of mandatory arbitration. *Id.* The Sixth Circuit stated:

> [W]e . . . hold that in a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief. We further conclude that a grant of preliminary injunctive relief pending arbitration is particularly appropriate and furthers the Congressional purpose behind the Federal Arbitration Act, where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, "'could not return the parties substantially to the status quo ante.'"

*Id.*

However, *Performance* is distinguishable form the facts in this action. *Performance* involved the breach of a licensing agreement that required the defendant to pay the plaintiff royalty payments based upon the sales of a children's book. *Id*. at 1375-77. The defendant informed the plaintiff that because the plaintiff had breached the license agreement the defendant would not pay the accrued royalties owed, stating that it wished to initiate arbitration pursuant to the terms of the license agreement. *Id*. at 1376. The plaintiff filed a complaint in district court, asserting a claim of breach of contract and seeking a declaration of the parties' rights under the agreement. *Id*. at 1377. The plaintiff also filed a motion for a preliminary injunction, seeking to enjoin the defendant from refusing to pay the royalties and directing that the defendant pay the royalties as provided in the agreement. *Id.* The plaintiff argued that it would suffer irreparable injury in the absence of injunctive relief because, in the absence of royalty payments, the plaintiff's business would be destroyed or driven into insolvency. *Id.* at 1381.

10

The Sixth Circuit found that the impending loss or financial ruin of the plaintiff's business constituted irreparable injury. *Id*. at 1382. The Sixth Circuit explained that "the type of irreparable harm which [the plaintiff] is likely to suffer, the loss of its business, is precisely the type of harm which necessitates the granting of preliminary injunctive relief pending arbitration, because *the arbitration will be a meaningless or hollow formality unless the status quo is preserved pending arbitration*." *Id*. (emphasis added). The Sixth Circuit further explained that "once the arbitration begins, it is for the arbitrators to decide how to maintain the status quo during the pendency of the arbitration process," which "minimizes the district court's involvement in the merits" and "preserve[s] the ability of the arbitration panel to fully address the merits of the dispute." *Id*. at 1386.

In *Nationwide Mut. Ins. Co. v. Universal Fid. Corp.*, No. C2-01-1271, 2002 WL 31409850 (S.D. Ohio July 15, 2002), the district court noted that *Performance* "does contain language which arguably supports both the position that injunctions pending arbitration should ordinarily be limited to preserving the status quo so that the arbitration is not a 'hollow proceeding,' and that the Court can grant preliminary equitable relief if the traditional factors governing such relief have been satisfied." *Id*. at *4. The court stated that the "former proposition," however, "is the holding of the case, and the latter is simply *dictum*." *Id*.

Here, unlike in *Performance*, Plaintiff does not assert or present any showing that he will suffer the type of financial ruin that threatened the plaintiff in *Performance*, warranting injunctive relief. Instead Plaintiff argues that "[g]ranting injunctive relief is vitally necessary . . . for Mr. Scripps to maintain his career and his relationships with his clients." (Docket Entry No. 13, at 5). Plaintiff argues that the "status quo here is . . . Mr. Scripps's professional reputation and career,

11

which relies on relationships with a number of music artist clients that he has developed over a number of years." (Docket Entry No. 20, at 4). However, as noted by Defendant, Plaintiff does not request to maintain the status quo by being permitted to work from home, being paid for his continued work, and being able to retain his clients with Defendant until the issue of whether Plaintiff was constructively discharged can be decided at arbitration, as forms of potential injunctive relief that would presumably keep Plaintiff from financial ruin. (Docket Entry No. 19, at 5). In fact, Plaintiff has rejected Defendant's offer for Plaintiff to work from home, has told Defendant to stop paying him, and has returned money paid by Defendant to him after March 28, 2018. (Docket Entry No. 21-2; Docket Entry No. 22-1; Docket Entry No. 29-1).[4]

Given these circumstances, the Magistrate Judge concludes that the type of harm at issue in *Performance* is not present here. The Magistrate Judge does not see why injunctive relief from the Court is necessary at this juncture. Even if Defendant were enjoined from stating that Plaintiff was still employed, Defendant would not be enjoined from stating its belief that Plaintiff was in violation of the restrictive covenants in the employment agreement and may face legal action for doing so. The letter to the potential employer did not state that Plaintiff was still employed, but that Plaintiff was still "under contract." (Docket Entry No. 24). Whether Plaintiff breached the employment agreement and to what extent he is bound by the restrictive covenants are issues to be decided by the arbitrator, pursuant to the parties' employment and arbitration agreements.

---

[4]On April 6, 2018, Plaintiffs' counsel notified Defendant that Plaintiff recently received a payment from Defendant for salary and expenses, that Plaintiff would "calculate any amounts owed to him up to the date of discharge," and that he would return the remainder. (Docket Entry No. 7-4, at 3).

12

Plaintiff argues that he is only requesting the Court to state facts that are not in dispute between the parties and cites Defendant's admission that it cannot force Plaintiff to work for it. (Docket Entry No. 13, at 1-2; Docket Entry No. 20, at 1-2). However, Plaintiff omits Defendant's qualifying sentence, "Defendant does contest the suggestion that Plaintiff can quit and ignore his obligations under the contract." (Docket Entry No. 12, at 3). This dispute goes to the underlying claim of whether Plaintiff breached his contract by quitting or was constructively discharged by Defendant, which is to be decided by the arbitrator. At the hearing, Defendant argued that although Plaintiff may be free to quit, such action would not extinguish his obligations under the employment agreement as Plaintiff would still remain under contract through July 31, 2019, the term of employment. Plaintiff argues that granting injunctive relief would not "interfere with whatever role the arbitrator might have in an arbitration proceeding--which will presumably be determining whether (a) Mr. Scripps was constructively discharged; or, alternatively, (b) Mr. Scripps quit in alleged violation of the Employment Agreement," and that "[a] ruling from this Court that his employment has terminated will have no effect on any alleged post-employment restrictions." (Docket Entry No. 20, at 5).

The employment agreement prohibits Plaintiff during the term of the agreement from engaging "directly or indirectly in any other trade, business or employment and . . . hav[ing] any material financial or ownership interest, direct or indirect, in any person, firm or corporation or other entity which engages in any business which is the same as or substantially similar to Employer's business." (Docket Entry No. 8-1, at 6). The employment agreement also prohibits Plaintiff, during the term of the agreement and for one year thereafter, from soliciting, with the exception of Plaintiff's RA clients, "any client of Employer" and from soliciting "other employees of Employer."

13

*Id.* at 7. Defendant argued at the hearing that to grant Plaintiff an injunction stating that Plaintiff is "no longer employed" would implicitly state that Plaintiff is no longer under contract and further argued that the reason that Plaintiff is asserting constructive discharge is that he is unsure if quitting extinguishes the employment agreement's covenants.[5]

The Magistrate Judge concludes that these issues are for the arbitrator to decide and that granting Plaintiff an injunction would circumvent the arbitration agreement by involving the Court in some of the merits of the dispute. The Magistrate Judge also notes that Plaintiff may request injunctive relief in arbitration pursuant to JAMS Rule 24(e), which provides, "Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief . . . ." (Docket Entry No. 8-1, at 26).

## B. WAIVER

Plaintiff argues that Defendant waived its right to arbitrate by breaching the arbitration agreement, which states that arbitration will be held at the closest JAMS office to where Plaintiff worked, when Defendant filed for arbitration with the JAMS office in Los Angeles, California, instead of in Atlanta, Georgia. Because of the strong presumption in favor of arbitration under the FAA, courts do "not lightly infer a party's waiver of its right to arbitration." *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). However, the Sixth Circuit has explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Id.*

---

[5]Defendant's supplemental response essentially reiterates this argument. (Docket Entry No. 31, at 2-4).

(citations omitted). The employment agreement provides that "[a]ny and all proceedings regarding the Agreement shall take place in Los Angeles, California, unless otherwise agreed to by Employer," (Docket Entry No. 8-1, at 9), while the arbitration agreement states that "[e]xcept as modified by this Agreement, any arbitration will be filed with and conducted by JAMS," with the arbitration being "held at the closest office of JAMS to where Employee reported to work for Company unless otherwise mutually agreed to by the parties," *id.* at 12. Even if Defendant were incorrect in making demand for arbitration in Los Angeles, the Magistrate Judge concludes that such action could not be construed as "completely inconsistent with any reliance on [the] arbitration agreement." Further, the record does not show that Defendant delayed its assertion to such an extent to cause Plaintiff to incur actual prejudice. Thus, Plaintiff has not shown that Defendant waived its right to arbitrate.

Moreover, as to the location of the arbitration, Section 1 of the arbitration agreement provides that the parties "mutually consent to resolve by final and binding arbitration any and all disputes, claims, or controversies of any kind or nature." *Id.* at 11. JAMS Rule 19(a) states that the "[a]rbitrator, after consulting with the Parties that have appeared, shall determine the date, time and *location* of the Hearing." *Id.* at 24 (emphasis added). JAMS Rule 6(b) also provides that "[i]f no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review." *Id.* at 18. In determining the location, "such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered." *Id.* Based upon the broad language in the employment agreement and the JAMS rules incorporated into the arbitration agreement, any dispute as to the location of arbitration would concern a contractual requirement. Thus, the location of arbitration for the underlying dispute would be an arbitrable

15

issue. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (stating that where the question at issue "does not concern a state statute or judicial procedures," but rather concerns "contract interpretation and arbitration procedures," "[a]rbitrators are well situated to answer that question" as the "matter of contract interpretation should be for the arbitrator, not the courts, to decide."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (The FAA "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'") (citation omitted).[6,7]

## C. UNCONSCIONABILITY

Plaintiff argues that to the extent the arbitration provision allows Defendant to seek injunctive relief but prohibits Plaintiff from doing so, the provision is unconscionable and therefore should not be enforced. (Docket Entry No. 13, at 2, 7). In support, Plaintiff apparently relies on

---

[6]The Magistrate Judge notes that in Plaintiff's response, Plaintiff cites the following provision from the arbitration agreement:

> Notwithstanding the foregoing, to the extent Employee has a written employment agreement with Company containing an arbitration provision and/or incorporating the terms of an attached arbitration agreement, this Agreement shall supersede the employment agreement solely with respect to the arbitration provision and/or incorporated arbitration agreement, and this Agreement shall have no effect on the enforceability of the other terms of the employment agreement.

(Docket Entry No. 13, at 6; Docket Entry No. 8-1, at 13). However, Plaintiff does not provide any argument or explanation as to the relevance of this passage or why Plaintiff even cited it. In any event, as discussed above, the interpretation of such a provision would be for the arbitrator to decide.

[7]The Magistrate Judge notes that Defendant has now advised that it has agreed to conduct the arbitration in Atlanta, Georgia, thus, obviating the need for a determination as to the proper location for the arbitration. (Docket Entry No. 19, at 2, 7-8).

16

paragraph 7(h) of the employment agreement, which provides, in part, that Defendant "shall be entitled to seek injunctive relief to prevent the violation of any of the subparagraphs above [involving the restrictive covenants] by [Plaintiff]." (Docket Entry No. 8-1, at 7). However, this provision is located in the employment agreement's section pertaining to covenants, which place obligations and restrictions only on Plaintiff. Thus, paragraph 7(h) provides injunctive relief only for Defendant because only Plaintiff can breach the covenants against Defendant.

Plaintiff also erroneously argues that the "Employment Agreement explicitly contemplates that APA can seek injunctive relief *in Court*." (Docket Entry No. 13, at 7). However, paragraph 7(h) makes no reference to "Court," but only provides for the remedy of injunctive relief. Paragraph 6 of the arbitration agreement provides that "[t]he arbitrator may award any form of remedy or relief (including injunctive relief) that would otherwise be available in court and any such form of remedy or relief awarded must comply with applicable state and federal law." (Docket Entry No. 8-1, at 12). This provision allows for either party to apply for injunctive relief through arbitration. Thus, Plaintiff's contention here is without merit.

## IV. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff Cass B. Scripps's emergency motion for hearing on motion for temporary injunction (Docket Entry No. 7) be **DENIED,** Defendant Agency for the Performing Arts, Inc.'s motion to stay pending arbitration (Docket Entry No. 8) be **GRANTED**, and that this action be **ADMINISTRATIVELY CLOSED** pending the completion of arbitration.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation

proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 8th day of May, 2018.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge